# United States District Court
## Northen District of Ohio
## Akron Division

| | | |
|---|---|---|
| Joseph Streater on behalf of himself and on behalf all others similarly situated, | :: | |
| **Plaintiffs,** | :: | Case No. 5:18cv643 |
| | :: | Judge Lioi |
| vs. | | |
| | :: | |
| Sarchione Chevrolet, Inc. | | |
| **Defendant.** | | |
| _____/ | :: | |

---

**Second Amended Class Action Complaint for Enforcement of Claims Pursuant to the Federal Truth-in-Lending Act (TILA) and the Ohio Consumer Sales Practices Act (OCSPA), Individual Liability for Conversion, Unlawful Repossession and UCC Violations; Seeking Actual, Compensatory, Statutory & Punitive Damages; Permanent Injunctive & Declaratory Relief; Attorney Fees & Jury Demand**

---

Plaintiff, **Joseph Streater**, on behalf of himself and on behalf of all others similarly situated (hereinafter "named plaintiff"), sue defendant, **Sarchione Chevrolet, Inc.** (hereinafter "Defendant" or "Sarchione") and allege as follows:

### Introduction & Preamble

1. This is an action brought against the Defendant, Sarchione Chevrolet, Inc., containing both class and individual claims for statutory and actual damages brought pursuant to the federal Truth in Lending Act, 15 U.S.C. §§1601, et seq., Regulation Z, 12 C.F.R. §226.1, et seq. (hereinafter "TILA"), for statutory damages, declaratory and

injunctive relief pursuant to the Equal Credit  Opportunity Act, 15 U.S.C. §1691 ["ECOA"] and injunctive relief pursuant to the Ohio Consumer Sales Practices Act (hereinafter "OCSPA"), O.R.C. §1345.01, et seq., and for punitive damages pursuant to common law fraud, conversion and unlawful repossession.

2. Claim One is a purported class claim which alleges that Defendant, Sarchione, as a creditor, at all times refused to comply with TILA by providing Plaintiff and the putative class he seeks to represent, with retail installment sales contracts (RISCs) containing contradictory,  irreconcilable, illusory, and meaningless credit disclosures; obtained signatures on these RISCs, then delivered or promised to deliver the purchased vehicle to Plaintiff and the putative class members with no intention to honor any contract term or provision.  Instead, Defendant purports to tell all finance buyers that it is not a creditor and that there is no creditor unless and until it chooses to sell the RISC to a willing third party.  Defendant then surreptitiously obtains the buyer's signature on a separate waiver form which Defendant euphemistically calls a "Spot Delivery" agreement pointing only to the signature line (stating "sign here") intentionally not disclosing its purported significance.  The form contained language purporting to relieve Defendant from its legal status of "creditor," referring instead to some undisclosed third party, as a creditor, and then only if Defendant chooses to assign its contract.  According to Defendant, it is at the time of assignment that contract consummation occurs, if at all, in violation of  15 U.S.C. §1601(a), §1602(f), (g), §1638(b), 12 C.F.R. §226.1(b), §226.2(13), (17), §226.17(b), §226.18.

3. Claim Two is a purported class claim for actual damages, declaratory and injunctive class relief and for punitive damages to redress Defendant's violations of the Equal Credit Opportunity Act, 15 U.S.C. §1691, et. seq., and Regulation B, 12 C.F.R. §201, et seq. (ECOA). Plaintiffs seek relief from the acts of Defendant who has failed to provide to plaintiffs or to the putative class any written notification of the reasons for

Defendant's adverse credit action in response to credit applications and/or buyer-signed RISCs obtained by Defendant.

4. Claim Three is a purported class claim which alleges that Defendant's acts and practices are violations of ORC §§1345.02 and 1345.03 as they are deceptive, unfair and/or unconscionable and are continuing and should be permanently enjoined.

5. Claim Four is an individual claim made pursuant to the federal truth-in-lending act seeking statutory and actual damages for Defendant's failure to provide Plaintiff with a credit disclosure statement containing material credit disclosures at the time of consummation by which he was entitled to in order to compare the cost of credit.

6. Claim Five is an individual claim made pursuant to Ohio's Consumer Sales Practices Act alleging that Defendant committed acts which were unfair, deceptive and unconscionable toward the Plaintiff.

7. Claim Six is an individual claim made pursuant to common law for Defendant's unlawful repossession of Plaintiff's motor vehicle, to wit: a 2017 Chevrolet Camaro ZL1.

8. Claim Seven is an individual claim made pursuant to common law for civil theft or conversion of Plaintiff's personal property, to wit: a 2017 Chevrolet Camaro ZL1 motor vehicle.

9. Claim Eight is an individual claim made pursuant to Ohio's Uniform Commercial Code (UCC) for statutory damages calculated under O.R.C. §1309.625 for selling Plaintiff's vehicle without proper notice of sale after repossessing it.

**Parties**

10. At all times relevant and material Defendant, Sarchione Chevrolet, Inc. [hereinafter "Sarchione" or "Defendant"] was licensed to transact business in Ohio, believed to be in Portage County, and a "creditor" as the term is defined in 15 U.S.C. §1602(g), 12 C.F.R. §226.2(17) and ,15 U.S.C. §1691(e)  as well as "supplier" as the term is defined in O.R.C §1345.01© and further engaged in consumer transactions as defined in O.R.C.§1345.01(A) which consisted of selling new and used motor vehicles to consumers.

11.  Plaintiff, Joseph Streater, is a "Consumer" as the term is defined in 15 U.S.C. §1602(I) and O.R.C §1345.01(D).

**Claim One**
**[Truth-in-lending Act-tila]**
**Jurisdiction**

12. The jurisdiction of this Court is invoked pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C.§ 1337. Venue is proper because the acts complained of occurred primarily in this District.

**Specific Factual Allegations**

13. Prior to October, 2107 Plaintiff began searching the internet for a Chevrolet Camaro ZL1 which had to be a 2014 or newer model vehicle. Each time he came close to finding one, by the time he inquired, the vehicle was sold. He finally found one advertised by Defendant.

14. On October 5, 2017 Plaintiff was put in touch with Defendant's salesman, Todd Bollman. Plaintiff gave Bollman his credit information and, as a result, he was told that deal could be "done" through "Santander" [Santander Consumer U.S.A., Inc.] but it would require that his wife, Sonja Gumbrecht, co-sign the obligation.

15. During the week that followed, at the request of Bollman, Plaintiff sent numerous documents to Defendant evidencing proof of his employment and income so, as referenced by Defendant, to be able to "sell" the deal to Santander or some other third party lending source.

16. During this period Bollman made representations to the Plaintiff that he was so certain that the deal would be approved by Santander that he convinced the Plaintiff, on October 12, 2017, to dispatch his son from Camden, N.J. to the Defendant's location with his trade of a 2014 Honda Accord [hereinafter the "Accord" or the "trade"] and for the purpose of inspecting the subject vehicle he desired to purchase from the Defendant.

17. While his son was present at the Defendant, Plaintiff negotiated the price of his trade where Defendant agreed to payoff the balance Plaintiff owed on his trade to South Jersey Federal Credit Union, the lienholder, in the amount of $13,250. Plaintiff's son also paid $1000.00 on behalf of his father which was demanded by Defendant to supposedly hold the Camaro. Based upon being informed by the Defendant that the deal had been approved, Plaintiff instructed his son to leave the trade with the Defendant and to drive back to New Jersey with his cousin who had driven up with him in a separate vehicle.

18. On October 23, 2017, after a seemingly long delay, Bollman texted Plaintiff that he got Santander to approve the deal with a $12000 downpayment which Plaintiff agreed to make. Bollman further informed Plaintiff that he would be contacted shortly by a document agent nearby his residence to execute a retail installment sales contract [hereinafter the "Risc"] and all other documents.

- 5 -

19.  On October 28, 2017 Plaintiff met in person with Defendant's agent in New Jersey to sign paperwork consisting primarily of a Risc and a Spot Delivery Agreement as well as many other documents. The Risc which the Plaintiff signed expressly provided that the Defendant herein was the "seller-creditor" who was extending credit to the Plaintiff in the amount of  $51,791.04 which consisted of 72 consecutive monthly payments of $719.32 commencing November 17, 2017 [see attached Plaintiff's exhibit "A"]. At the same time Plaintiff was also required to sign a "Spot Delivery" agreement which directly contradicted the terms of the retail installment sales contract and which provided that the Defendant could void or change the terms of the Risc if it was unable to sell the deal to a third party [see attached Plaintiff's exhibit "B"]. At that time Plaintiff also added the subject Camaro vehicle to his insurance coverage.

20. The Risc contained a provision known as the "Limited Right to Cancel" which provided that the Defendant could cancel the contract if it was unable to sell the contract to a third party. Only the box next to the provision was not marked so that the provision was not applicable.

21. At the time of the consummation on October 28th, Plaintiff expected to receive and asked the Defendant's document agent, Maverick Signing, for a copy of the Risc which contained the disclosure of all material credit terms and for other documents which he had signed but the agent refused stating that they would have to come from the Defendant and not him. On November 4, 2017 Plaintiff emailed the agent and once again demanded copies of the documents he signed. The agent emailed in response that he could not provide the Plaintiff with any documents and continued to claim that any document would have to be provided by the Defendant.

- 6 -

22. On November 2, 2017, Plaintiff received a text from Bollman asking Plaintiff to call. When he called he was informed that Defendant "could not do the deal" because Santander was re-structuring it in which it supposedly demanded that the Defendant pay an additional $1500 which, according to the Defendant, "couldn't be passed on the customer". Plaintiff offered to pay the $1500 but Defendant refused and informed the Plaintiff that the "deal was dead", that it would refund his $1000 downpayment and for Plaintiff to come and pick up his trade. Defendant has, to date, refused to refund Plaintiff's $1000 downpayment after having agreed and promising to do so.

23. Thereafter, while Plaintiff was figuring out how to retrieve his trade and to bring it back to New Jersey, Defendant maliciously, upon information and belief, contacted the lienholder and misrepresented that Plaintiff had abandoned his trade in spite of the fact that Plaintiff was continuing to make payments on it. Upon further information and belief, this caused the lienholder to have the Accord unlawfully repossessed on December 18th and sent to auction for sale in Grove City, Ohio. The Accord was unlawfully sold at the Manheim Auto Auction on January 23, 2018 without notice of sale being provided to the Plaintiff.

**Legal Allegations**
**[class claim]**

24. This is a claim for actual and statutory damages plus costs and attorneys' fees, brought pursuant to 15 U.S.C. §1601(a), et seq., 15 U.S.C. §1638, Regulation Z, 12 C.F.R. §226.1, et seq., and 15 U.S.C. §1640(a).

25. At all times material hereto Plaintiff and the putative class members were consumers, Defendant was a creditor, the credit extended was for consumer credit, and the transactions were credit sales, each as defined in 15 U.S.C. §1602 and

- 7 -

12 C.F.R. §226.2.

26. During the class period consistent with the TILA limitations period, Defendant has invariably violated TILA and Regulation Z in each of its credit sales by using illusory TILA disclosures in its RISCs including the APR, the Finance Charge, the Amount Financed, the Total of Payments, the Total Sale Price and every other material credit term in the Plaintiff's and the putative classes' RISCs because, at the time of consummation as defined by TILA, the disclosures were subject to subsequent change or cancellation at Defendant's sole and arbitrary discretion; Plaintiffs' transaction being typical of the class.

27. Defendant's acts and omissions are violations of TILA as TILA's purpose is to assure a meaningful disclosures of all material terms so that consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit. This is the case because it is impossible to meaningfully compare terms that are cancellable or changeable at Defendant's whim with credit terms proposed by its competitors.

28. In practice Defendant purports to condition the Plaintiff's and the putative classes' RISCs on its desire and ability to sell its contractual obligation to a third party, thus illegally extending consummation to a point in time when a third party might buy Defendant's RISC, days after buyer signing. TILA mandates that consummation occurs at the time that buyers sign a RISC.  12 C.F.R. §226.2(13).

29. Plaintiff alleges that his financing contract was not completed as to all essential provisions because at the time named Plaintiff and the putative class members signed a RISC, Defendant considered the Truth in Lending terms to be non-final and  subject to change at Defendant's whim.  Defendant in practice either unilaterally changes the terms and then obtains the Plaintiff's and the putative classes' signatures on a second, unbargained-for contract, or Defendant considers itself not bound by the RISC terms,

revokes the contract, fails to deliver the vehicle, seizes it or otherwise reacquires the purchased vehicles from the buyers. Hence the essential terms are not completed at the time of consummation, are fictitious and illusory, and are "completed", if ever, long after contract signing, depending upon whether Defendant chooses to sell (assign) the buyer-signed RISCs to a third party, or chooses to revoke the RISCs and unilaterally change the terms to its advantage. This, on the false excuse that "the bank rejected your credit."

30. After Defendant had Plaintiff complete a RISC, at the same time, it purported to relieve itself from its status as creditor and to waive the consumer protection of TILA by requiring him to execute a "Spot Delivery" Agreement.   Such waiver forms and waiver provisions are illegal as being contrary to the public policy enacted by TILA whose very purpose is to provide a *meaningful* disclosure of credit terms to consumers, including Plaintiffs and the putative class members. According to Defendant's unilateral revocation language, Defendant disclaims that it is a creditor despite the parties' previously executed RISC which expressly identifies and represents Defendant as the creditor.  According to its spot delivery document Defendant asserts that it is not a creditor and that it is magically discharged from TILA compliance because TILA applies only to creditors.

31. Plaintiff's and Defendant's RISC and Defendant's spot delivery form completely contradict one another. Plaintiff contends herein that Defendant's "spot delivery" form and language constitutes an illegal waiver of statutory obligations and consumer rights because Defendant uses them to circumvent its obligations under TILA and the RISC itself which, concomitantly waives the buyers' statutory and contractual rights.  The statutes and the RISC provide that the buyer-signed contract be the parties' final integrated writing and be binding on Defendant and the consumer at the time of signing and vehicle delivery, i.e., consummation.  The RISC and these consumer protection statutes are to be construed liberally in favor of consumers and strictly against the seller.

32. This combination of, on the one hand, the extension of  credit in unambiguous terms, while on the other hand simultaneously withdrawing the extension of credit in the same document violates TILA, common law contract principles, i.e., merger doctrine, mutuality of obligation, consideration; violates equitable principles, and violates the OCSPA, as alleged *infra*.

## Class Action Allegations

33. Named Plaintiff brings this action on behalf of himself and all other individuals similarly situated as defined below.  This action is maintainable as a class action pursuant to the federal Rules of Civil Procedure, rules 23(b)(3) for monetary damages.

34. The class and sub-classes named Plaintiff seeks to have certified are defined as follows:

## Tila General Class

### I. Tila General Class Claim

This class is defined as follows: All persons who have signed retail installment sale contracts [Riscs] with Defendant similar or identical to the one signed by the Plaintiff which contained a "Limited Right to Cancel Provision" which was designated therein as inapplicable within the class period defined by the applicable statute of limitations whose signatures were also obtained by Defendant on a Spot Delivery or similar type form purporting to give Defendant the right to cancel their contracts.

**Tila Sub-classes**
**A. Tila Claim One Subclass I**

All persons who have signed retail installment sale contracts [Riscs] with Defendant similar or identical to the one signed by the Plaintiff which contained a "Limited Right to Cancel Provision" which was designated therein as inapplicable within the class period defined by the applicable statute of limitations whose signatures were also obtained by Defendant on a Spot Delivery or similar type form purporting to give Defendant the right to cancel their contracts and whose retail installment contracts were cancelled by Defendant.

**B. Tila Claim One Subclass II**

All persons who have signed retail installment sale contracts [Riscs] with Defendant similar or identical to the one signed by the Plaintiff which contained a "Limited Right to Cancel Provision" which was designated therein as inapplicable within the class period defined by the applicable statute of limitations whose signatures were also obtained by Defendant on a Spot Delivery or similar type form purporting to give Defendant the right to cancel their contracts and who signed a second RISC with more expensive terms.

**C. Tila Claim One Subclass III**

All persons who have signed retail installment sale contracts [Riscs] with Defendant similar or identical to the one signed by the Plaintiff which contained a "Limited Right to Cancel Provision" which was designated therein as inapplicable within the class period defined by the applicable statute of limitations whose signatures were also obtained by Defendant on a Spot Delivery or similar type form purporting to give Defendant the right to cancel their contracts and whose downpayment was kept in whole

or in  part by Defendant.

35.  The members of each class and subclass so designated are so numerous that joinder of all the members is impracticable. While the exact number of class members can be determined only by appropriate discovery from the defendant, based upon knowledge and information Plaintiffs believe that each include well sufficient members as Defendant's financing procedure is virtually identical in every consumer financing transaction.

36. Named Plaintiff's claims are typical of the claims of the members of each class and subclass.  Plaintiff can fairly and adequately protect and represent the interests of the members of each class and subclass and have retained counsel competent and experienced in class action litigation. Plaintiff's claims are practically identical to claims of the members of each class and subclass because Defendant obtains all finance buyers' signatures on a retail installment contract while contemporaneously obtaining those same buyers' signatures on a form or provision purporting to relieve Defendant of its status as creditor, thereby purporting to relieve Defendant  from any obligation under TILA and from the executed RISC itself, which is contrary to the public policy expressed in TILA and is void as a matter of law.

37. A class action is superior to other available methods for the fair and  efficient adjudication of this controversy.  Since the damages suffered by, or damages available to, individual members of the class may be relatively small, although not insignificant, the expense and burden of individual litigation makes it practically impossible for members of the classes to effectively seek individual redress for the defendant's wrongful conduct alleged in this complaint.

38. Common questions of law and fact exist as to all members of each class and subclass which predominate over any question solely affecting individual members of the classes.  The questions of law and fact common to each class include the following:

- 12 -

(a)  Whether Defendant's conduct alleged in this complaint is unlawful;

(b)  Whether Defendant's conduct alleged in Claim One constitutes violations of TILA at 15 U.S.C. §1601(a), §1638, 12 C.F.R. §226.1(b), §226.2(13), §226.17(b), §226.18.

(c )The measure of actual, statutory, and punitive damages available to Plaintiffs and to the putative classes for the defendant's wrongful conduct; and

(d)  Whether Defendant's alleged acts and practices should be declared as violations of TILA.

39. The prosecution of separate claims by individual members of any class or subclass would create a risk of (a) inconsistent or varying adjudications which could establish incompatible standards of conduct for the Defendant; or (b) individual adjudications would as a practical matter be dispositive of the interests of other members of the class who are not parties, or would substantially impair or impede the ability of other members of the class who are not parties to the adjudication to protect their interests; and (c ) the respective Defendant has acted or refused to act on grounds generally applicable to all members of the respective classes, thereby making declaratory and injunctive relief concerning each class as a whole appropriate.

## Claim Two
## [Equal Credit Opportunity Act-ECOA]
## [class claim]
## Jurisdiction

40. The jurisdiction of this Court is invoked pursuant to 15 U.S.C. § 1691e(f) and 28 U.S.C.§ 1337.  Venue is proper because the acts complained of occurred in this District and all parties are located in this District.

## Parties

41. The Parties are the same as in Claim One.

42. Defendant is a "creditor" as that term is defined in the Act at 15 U.S.C. §1691(e) who, in the ordinary course of business extends or arranges for the extension of credit for payments to be deferred in connection with any debt as that term is defined in the Act at 15 U.S.C.§1691(d) .

43. Plaintiff is an "applicant" as that term is defined in the Act at 15 U.S.C. §1691(b) who applied for credit.

## Allegations

44. Plaintiff re-alleges and incorporates each and every factual allegation of all preceding paragraphs.

45.   This is an action for actual damages, declaratory and injunctive class relief and for punitive damages to redress Defendant's violations of the Equal Credit Opportunity Act, 15 U.S.C. §1691, et. seq., and Regulation B, 12 C.F.R. §201, et seq. (ECOA). Plaintiff seeks relief from the acts of Defendant who has failed to provide to Plaintiff or to the putative class any written notification of the reasons for Defendant's adverse credit action in response to credit applications and/or buyer-signed RISCs obtained by Defendant.

- 14 -

46.  On or about October 28, 2017 Plaintiff submitted a credit application to Defendant in connection with the purchase and financing of the subject vehicle described herein.

47. Sometime after Plaintiff had signed a RISC on the vehicle, Defendant advised Plaintiff that it had revoked its original extension of credit, which was an adverse action under the ECOA.  Defendant regularly purports to extend credit (as evidenced by the RISCs) and when credit is denied or revoked it is Defendant who makes that decision.

48. At no time did Defendant provide Plaintiff or the putative class members with any written document in connection with the denial or revocation of credit or with the written notification required by 15 U.S.C. §1691(f), 12 C.F.R. §202.9(a)(2).

49. As a result of Defendant's violation of the ECOA and Regulation B, Plaintiffs has suffered actual damages for their embarrassment, humiliation, mental distress, and inconvenience, and  Defendant is liable therefore pursuant to 15 U.S.C. §1691e(a).

50. The acts and omissions complained of herein were done by Defendant intentionally, purposefully, and in reckless disregard of the rights of Plaintiff and the putative class members, and is liable to Plaintiff and the putative class for statutory punitive damages, i.e., the lesser of $500,000 or one per centum of the net worth of Defendant, pursuant to 15 U.S.C. §1691e(b).

51. Unless Defendant is ordered to henceforth provide credit applicants with the written notification required by law, the class and future members of such class will continue to suffer irreparable injury for which there is no adequate remedy at law.

52. The acts and omissions complained of herein were done by Defendant as part of a pattern and practice of failing to provide the required written notice to credit applicants and RISC signers regarding whom adverse action has been taken.

53. Defendant  maintains no procedures designed to insure that the written adverse action notice will be provided to the putative class members, or such procedures which are maintained are inadequate to insure that required notification will be provided.

54. Regarding those putative class members who have already had adverse action taken on their credit applications or their RISCs, unless Defendant is ordered to provide them the required written notification, they will continue to suffer irreparable injury for which there is no adequate remedy at law.

55. Regarding those putative class members who have as yet not had adverse action taken on their credit applications or signed RISCs, unless Defendant is ordered to establish and maintain appropriate procedures which are adequate to insure that the required written notifications are provided, they will suffer irreparable injury for which there is no adequate remedy at law.

**Class Action Allegations**

56. Named Plaintiff brings this action on behalf of himself and all other individuals similarly situated as defined below.  This action is maintainable as a class action pursuant to the federal Rules of Civil Procedure, rules 23(b)(1), (b)(2) and (b)(3) for monetary damages, injunctive and declaratory relief.

**ECOA class**

57. The classes named Plaintiff seeks to have certified are defined as follows:

All consumers who have signed a credit application with Defendant within the class period defined by the applicable statute of limitations and signed a retail installment contract prepared by Defendant whose initial retail installment contract was cancelled by Defendant after Defendant had obtained their credit report, and who were not provided with an adverse action notice by Defendant under 15 U.S.C. §§1691 et seq., 12 C.F.R. §202.9.

58.  The members of the class so designated are so numerous that joinder of all the members is impracticable. While the exact number of class members can be determined only by appropriate discovery from the defendant, based upon knowledge and information Plaintiffs believe that each include well sufficient members as Defendant's financing procedure is virtually identical in every consumer financing transaction.

59. Named Plaintiff's claims are typical of the claims of the members of the class. Plaintiff can fairly and adequately protect and represent the interests of the members of the class have retained counsel competent and experienced in class action litigation. Plaintiff's claims are practically identical to claims of the members of the class because Defendant obtains all finance buyers' signatures on a retail installment contract while contemporaneously obtaining those same buyers' signatures on a form or provision purporting to relieve Defendant of its status as creditor, thereby purporting to relieve

- 17 -

Defendant from any obligation under the executed RISC and, in each case, after cancelling their contract, fails to provide the notice of adverse action.

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by, or damages available to, individual members of the class may be relatively small, although not insignificant, the expense and burden of individual litigation makes it practically impossible for members of the class to effectively seek individual redress for the defendant's wrongful conduct alleged in this complaint.

61. Common questions of law and fact exist as to all members of each class and subclass which predominate over any question solely affecting individual members of the classes. The questions of law and fact common to each class include the following:

(a) Whether Defendant's conduct alleged in this complaint is unlawful;

(b) Whether Defendant's conduct alleged in Claim Two constitutes a violation of the ECOA where Defendant was required to provide notice of adverse action;.

(c) The measure of actual, statutory, and punitive damages available to Plaintiff and to the putative classes for the defendant's wrongful conduct;

(d) Whether Defendant's alleged acts and practices should be declared as violations of the ECOA; and,

(e) Whether Defendant should be enjoined from continuing to engage in such unlawful acts.

62. The prosecution of separate claims by individual members of the class would create a risk of (a) inconsistent or varying adjudications which could establish incompatible standards of conduct for the Defendant; or (b) individual adjudications would as a practical matter be dispositive of the interests of other members of the class who are not parties, or would substantially impair or impede the ability of other members of the class who are not parties to the adjudication to protect their interests; and (c) the respective Defendant has acted or refused to act on grounds generally applicable to all

- 18 -

members of the respective classes, thereby making declaratory and injunctive relief concerning each class as a whole appropriate.

**Claim Three**
**[Ohio Consumer Sales Practices Act-OCSPA]**
**[class claim]**
**Jurisdiction**

63. This claim made is made pursuant to O.R.C. §1345.01, et seq.

64.  The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367, in that Plaintiff's state claim is so related to his federal statutory claims the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Venue is proper because the acts complained of occurred primarily in this District.

**Parties**

65.  This is an action for actual damages and for declaratory and injunctive relief brought pursuant to the Ohio Consumer Sales Practices Act, §§1345.01, et seq., [hereinafter the "Act"].

66. Plaintiff is a "consumer" as defined in the Act at O.R.C. §1345.01(D).

67. Defendant is a "supplier" as defined in the Act at O.R.C. §1345.01(C ) who entered into a "consumer transaction" with the Plaintiff.

## **Allegations**

68. Plaintiff re-alleges and incorporates each and every factual allegation of all preceding paragraphs.

69. Named Plaintiff and the putative classmembers are aggrieved parties and seek actual damages and a declaration that Defendant's acts and practices violate the OCSPA, and seek a permanent injunction prohibiting Defendant from engaging in the same or similar conduct in the future.

70. Without limiting the scope or the number of violations committed by Defendant, the following is a non-exclusive list of conduct which may be considered either deceptive, unfair, and/or unconscionable sales practices committed by Defendant:

> (a) obtaining customer signatures on contracts that are not fully completed at the time the customer signs. (Defendant's financial procedure purports to render the RISC incomplete and subject to unilateral change.)

> (b) failing to deliver to Plaintiff and to the putative class members a copy of a RISC completed as to all essential provisions at or before consummation. (Contracts subject to Defendant's unilateral revocation pending assignment are not "completed" at time of buyer's signing because, according to Defendant, the RISCs are completed only upon assignment to a third party.)

> (c ) obtaining, as part of its business practice, its customers' signatures on waiver forms or waiver provisions which purport to relieve it from its status as creditor, and which purport to waive and to circumvent the requirements of TILA, and the RISCs themselves.

> (d) knowingly causing the plaintiff to enter into a consumer transaction on terms Defendant knew were substantially one-sided in its favor.

> (e) knowingly failing to provide material credit disclosures required under federal law, including invariable credit terms.

(f) delaying the time of consummation from the date buyers sign a RISC to a later date when a third party buys the RISC from Defendant or, if a third party does not accept assignment, it claims that no consummation ever occurs.  12 C.F.R. §226.2(13).  (In practice Defendant purports to condition plaintiff's and the relevant classes' RISCs on Defendant's desire or ability to sell its contractual obligation to a third party).

(g) keeping all or a portion of its financing customers' downpayments (including trade-ins) after revoking the RISCs and repossessing the sold vehicles.

(h) requiring prospective customers to acquire and to pay for casualty insurance on the subject motor vehicles prior to entering into a binding contract for the purchase of a motor vehicle.  (Through the use of waiver forms and provisions, Defendant  claims that it remains the owner of the sold vehicles until such time, if at all, as assignment of the RISCs to a third party is effected.  If the motor vehicles are not owned by plaintiff or the putative class members, then any money paid toward insuring the motor vehicles constitutes damages to plaintiff and to the class members.)

(I) declaring that Defendant itself is not a creditor extending financing under the RISC and that the creditor is some as-yet unknown third party, and then only if Defendant  chooses to assign the RISC to a third party.

(j) contemporaneously extending credit to customers by way of unambiguous RISC provisions including a merger clause, and revoking that extension of credit by use of one or more waiver forms or provisions.

(k) failing to timely apply for transfer of title as prescribed in ORC §4505.01, et seq. In transactions that were recalled by Defendant.

(l) failing to provide adverse action notices to its financing customers.  (in all such transactions it is the Defendant who revokes and rejects credit but issues no adverse action notices.)

(m) reserving the purported right to unilaterally revoke consumer RISCs, Defendant can and does insert financing terms in RISCs that are intentionally false just to obtain the buyers' signature.  Defendant does this to take the buyer out of the market so the buyer will shop no further in the belief that he or she has a completed deal.  Defendant's real intention, however, is to call the buyer back to the Defendant to change the terms to its advantage on the false representation that "the bank rejected your credit."  Defendant then cancels the contract, demands more money down, raises the interest rate, requires a cosigner, or even changes the year, make and model of the purchased vehicle.  The buyer has no practical means of verifying Defendant's representations and must take Defendant's word regarding finance rejection as an article of faith.

(n) misrepresenting that the subject of a consumer transaction had sponsorship, approval, performance, characteristics, accessories, uses, or benefits that it did not have.

(o) misrepresenting that it had sponsorship, approval or affiliation that it did not have.

(p) falsely misrepresenting the rights, obligations and remedies that the plaintiff, as a consumer, had under law.

(q) knowingly making misstatements of opinion in connection with the transaction which was designed to exaggerate the remedies or power of Defendant.

**Class Action Allegations**

71. Named Plaintiff brings this action on behalf of himself and all other individuals similarly situated as defined below.  This action is maintainable as a class action pursuant to the federal Rules of Civil Procedure, rules 23(b)(1), (b)(2) and (b)(3) for monetary damages, injunctive and declaratory relief.

**OCSPA class**

72. The class named Plaintiff seeks to have certified is defined as follows:

This class is defined as: All persons who have entered into consumer transactions with Defendant within the class period defined by the applicable statute of limitations who were subjected to deceptive, unconscionable and unfair sales practices as defined in either the Ohio Consumer Sales Practices Act, or declared deceptive in Ohio Court decisions contained published in the Ohio Attorney General's Public Inspection File and/or which were in violation of the Ohio Administrative Code 109-4-3-16, et seq.

73. The members of the class so designated are so numerous that joinder of all the members is impracticable. While the exact number of class members can be determined only by appropriate discovery from the defendant, based upon knowledge and information Plaintiffs believe that each include well sufficient members as Defendant's financing procedure is virtually identical in every consumer financing transaction.

74. Named Plaintiff's claims are typical of the claims of the class. Plaintiff can fairly and adequately protect and represent the interests of the members of the class and have retained counsel competent and experienced in class action litigation. Plaintiff's claims are practically identical to claims of the members of the class because Defendant obtains all finance buyers' signatures on a retail installment contract while contemporaneously obtaining those same buyers' signatures on a form or provision purporting to relieve Defendant of its status as creditor, thereby purporting to relieve

Defendant  from any obligation under TILA and from the executed RISC itself, which is contrary to the public policy expressed in TILA and is void as a matter of law.

75. A class action is superior to other available methods for the fair and  efficient adjudication of this controversy.  Since the damages suffered by, or damages available to, individual members of the class may be relatively small, although not insignificant, the expense and burden of individual litigation makes it practically impossible for members of the classes to effectively seek individual redress for the defendant's wrongful conduct alleged in this complaint.

76. Common questions of law and fact exist as to all members of each class and subclass which predominate over any question solely affecting individual members of the classes.  The questions of law and fact common to each class include the following:

(a)  Whether Defendant's conduct alleged in this complaint is unlawful;

(b)  Whether Defendant's conduct alleged in Claim One constitutes  violations of TILA at 15 U.S.C. §1601(a), §1638, 12 C.F.R. §226.1(b), §226.2(13), §226.17(b), §226.18.

(c ) Whether Defendant's conduct alleged in Claim Two constitutes  deceptive, unfair or unconscionable acts and practices in violation of the OCSPA.

(d) The measure of actual, statutory, and treble damages available to plaintiff and to the putative classes for the defendant's wrongful conduct; and

(e)  Whether Defendant's alleged acts and practices should be declared as violations of OCSPA and be permanently enjoined.

77. The prosecution of separate claims by individual members of the class would create a risk of (a) inconsistent or varying adjudications which could establish incompatible standards of conduct for the Defendant; or (b) individual adjudications would as a practical matter be dispositive of the interests of other members of the class who are not parties, or would substantially impair or impede the ability of other members of the class who are not parties to the adjudication to protect their interests; and (c ) the respective Defendant has acted or refused to act on grounds generally applicable to all members of the respective class, thereby making declaratory and injunctive relief concerning each class as a whole appropriate.

## Individual Claims

## Claim Four
### [truth-in-lending]

78. Plaintiff makes this claim individually pursuant to the federal truth-in-lending act, 15 U.S.C. §1601, et seq. [hereinafter the "Act" or "tila"].

## Jurisdiction

79. The jurisdiction of this Court is invoked pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C.§ 1337.  Venue is proper because the acts complained of occurred primarily in this District.

## Parties

80. The Parties are the same as in all other claims.

## Allegations

81. Plaintiff hereby incorporates all factual allegations of any previously alleged claim as if fully rewritten herein.

82. Defendant's agent, Maverick Document Signing through Michael Medina in Cherry Hill, New Jersey met in person with the Plaintiff on October 28, 2017 to execute various documents in connection with the sale and financing of a 2017 Chevrolet Camaro. Among the many documents to be signed was a retail installment sales contract [see attached Plaintiff's exhibit "A"] [hereinafter the "Risc"]. The Risc supposedly contained all the material credit disclosures required by the Act.

83. After signing the Risc and other documents presented to him, in spite of Plaintiff's express request to have copies that he might keep, Defendant's agent refused to provide any of the documents, including credit disclosures. Plaintiff was informed that the documents could only be provided by the Defendant at some future unknown date.

- 26 -

84.  Several days later, on November 4, 2017, Plaintiff emailed Defendant's agent and demanded copies of the documents. Defendant's agent immediately responded with an email continuing to refuse to provide any of the documents, including Plaintiff's exhibit "A", informing the Plaintiff that Defendant would be doing so at some later unknown date.

85. Prior to the filing of this lawsuit counsel requested the disclosure document in order to fully investigate and evaluate Plaintiff's claims and was refused.

86. To this day Defendant has never voluntarily provided any credit disclosure to the Plaintiff or his counsel except to have to comply with Plaintiff's Request for Production.

87. To comply with the Act the consumer must be provided with a copy of all material credit disclosures described in 15 U.S.C. §1638(a) and Reg. Z, 12 cfr 226.17(a)(1) at the time of the signing to take with him to be meaningful and not at a later time after the transaction has already been consummated.

88. Essentially, Defendant provided no meaningful credit disclosure to Plaintiff of any material credit terms and, therefore, violated the Act.

## Claim Five
### [Ohio Consumer Sales Practices Act-OCSPA]

### Jurisdiction

89. Plaintiff makes this claim individually pursuant to the Ohio Consumer Sales Practices Ac, O.R.C. §1345.01, et seq.[hereinafter the "Act" or "OCSPA"].

90.  The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367, in that Plaintiff's state claim is so related to his federal statutory claims the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

91. Venue is proper because the acts complained of occurred primarily in this District.

### Parties

92. Plaintiff is a "consumer" as defined in the Act at O.R.C. §1345.01(D).

93. Defendant is a "supplier" as defined in the Act at O.R.C. §1345.01(C ) who entered into a "consumer transaction" with the Plaintiff.

### Allegations

94. Plaintiff adopts and realleges all factual allegations previously alleged and incorporates them herein by reference as if fully rewritten.

95. On or about October 28, 2017 the parties entered into a consumer transaction for the sale and financing of a 2017 Chevrolet Camaro by executing a Risc whereby the Defendant agreed to sell to and finance the vehicle.

96. As part of that transaction between the parties, Defendant demanded that Plaintiff pay $1000 for it to hold the subject vehicle.

97. At a later date when Defendant was unable to sell or assign the deal to a third party Defendant refused to honor its obligation as a creditor with the Plaintiff.

98. Additionally, Plaintiff had offered his 2014 Honda Accord in trade as part of the transaction which he negotiated with the Defendant. Plaintiff had his son drive the vehicle all the way from Camden, New Jersey to Defendant's location in Alliance, Ohio.

99. Later on, after Defendant refused to honor its deal with the Plaintiff, out of malice and spite, it contacted Plaintiff's lienholder and creditor and lied to it that Plaintiff had abandoned his trade which was a 2014 Honda Accord. This resulted in the lienholder repossessing the vehicle and then transporting it to a distant location where, unknown to the Plaintiff, it was recently sold under market value without Plaintiff receiving notice of sale.

- 28 -

100. Without limiting the scope of any violation which may have occurred, Defendant committed the following acts which may be considered unconscionable under O.R.C. §1345.03:

> (a) Defendant knowingly made a misleading and false statement to Plaintiff's lienholder which resulted in the repossession and ultimate wrongful sale of his 2014 Honda Accord; and,

> (b) Defendant, after having unilaterally cancelled its obligation to the Plaintiff it, without justification, refused to refund his $1000 deposit.

## Claim Six
## [unlawful repossession]
## Jurisdiction

101. This claim is made pursuant to the common law tort of wrongful repossession.

102. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367, in that Plaintiff's state claim is so related to his federal statutory claims the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Venue is proper because the acts complained of occurred primarily in this District**.**

## Parties

103. The parties are the same as in all other claims.

## Allegations

104. Plaintiff hereby incorporates paragraphs 12-21 as if fully rewritten herein.

105.  On October 28, 2017 the parties entered into a retail installment sales contract in which the Defendant agreed to sell and to finance, as a creditor, a 2017 Chevrolet Camaro to the Plaintiff in 72 payments of $719.92 .53 [see attached Plaintiff's exhibit "A"].

106. Thereafter, Defendant attempted to sell the Risc to Santander Consumer USA who Defendant claimed refused to purchase same.

107. Defendant, instead of honoring its obligation with the Plaintiff under the Risc, chose to lie to Plaintiff and informed him that it was unable to get him financed when, in fact, it already agreed to finance the deal.

108. On October 28, 2017 Plaintiff was the owner of the subject Camaro, yet Defendant refused to transfer title or to deliver the vehicle; essentially, repossessing by failing to deliver the vehicle to him.

109. Plaintiff was not in default of any obligations under the Risc at the time and Defendant was not entitled to repossess the subject vehicle.

110. Defendant's refusal to allow Plaintiff to take possession of the vehicle constituted an unlawful taking and/or a repossession.

111. Defendant's taking of the vehicle was wilful, wanton and malicious and in complete disregard for the property rights of the Plaintiff.

**Claim Seven**
**[conversion]**
**Jurisdiction**

112. This claim is made pursuant to the common law tort of civil theft or conversion.

113. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367, in that Plaintiff's state claim is so related to his federal statutory claims the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Venue is proper because the acts complained of occurred primarily in this District.

**Parties**

114. The parties are the same as in all other claims.

**Allegations**

115.  Plaintiff hereby incorporates all factual paragraphs as previously alleged as if fully rewritten herein.

116.  Plaintiff owned the vehicle pursuant to a Retail Installment Sales Contract and had a legal right to use the vehicle and was in a position to use the vehicle.

117. Plaintiff was prevented from using the vehicle only because Defendant's wrongful detention of his property.

118. The conduct of the Defendant described herein constitutes conversion of Plaintiff's property.

119. Defendant acted to serve its own interests, knowing that such conduct would wrongfully deprive the Plaintiff of his property.

120. Defendant's taking of the vehicle was wilful, wanton and malicious and in complete disregard for the property rights of the Plaintiff.

**Claim Eight**
**[UCC]**
**Jurisdiction**

121. This claim is made pursuant to Ohio's Uniform Commercial Code, O.R.C. §1309.610, et seq. which governs the disposition of secured property upon repossession.

122. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367, in that Plaintiff's state claim is so related to his federal statutory claims the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**Parties**

123. The parties are the same as in all other claims.

**Allegations**

124. Plaintiff hereby incorporates all factual paragraphs as previously alleged as if fully rewritten herein

125. Defendant having repossessed Plaintiff's Camaro there came a time when it sold that vehicle to an unknown third party.

126. Prior to that sale, Defendant was required to send a notice of sale to the Plaintiff pursuant to O.R.C. §1309.611.

127. Defendant failed to send such notice resulting in a commercially unreasonable sale and damages owed to Plaintiff calculated by the formula contained in O.R.C. §1309.625.

### Prayer for Relief

WHEREFORE, named Plaintiff prays for the following relief:

(a) in claims one, two and three for an adjudication that each class and subclass plead herein be determined by this Court as appropriate for class action treatment;

(b) in claim one for statutory damages consisting of $1,000,000 or 1% of Defendant's net worth, whichever amount is less.

(c) in claim two for statutory damages of $500,000.00 or 1% of Defendant's net worth and individually for any actual damages proven and punitive damages in the amount of $10,000.00;

(d) in claim three for actual monetary damages to the class as a whole;

(e) in claims two and three for injunctive and declaratory relief;

(f) in claim four for twice the finance charge amounting to $33,015.08;

(g) in claim five for treble actual damages proven for an act or practice declared to either deceptive, unfair or unconscionable by a Court of this state which decision is contained in the Attorney General's Public Inspection file;

(h) in claims six and seven for compensatory and punitive damages for willful, wanton and malicious misconduct toward the Plaintiff;

(i ) in claim eight for statutory damages calculated pursuant to O.R.C. §1309.625;

(j)  in all claims for reimbursement for all reasonable attorney fees and costs;

(k) for a trial by jury in all claims where appropriate; and,

(I) for any and all other relief this Court may deem appropriate

Respectfully submitted by:

*/S/STEVEN C. SHANE*
Steven C. Shane (Ohio Bar #0041124)
Trial Attorney for Plaintiff
P.O. Box 73067
Bellevue, KY 41073
(859) 431-7800
(859) 431-3100 facsimile
shanelaw@fuse.net

and

*/S/EDWARD A ICOVE*
Edward A. Icove (0019646)
Icove Legal Group. Ltd.
Terminal Tower
50 Public Square
Suite 3220
Cleveland, Ohio 44113
(216) 802-0000
(216) 802-0002 facsimile
ed@icovelegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Second Amended Complaint was filed with the Clerk of this Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Steven C. Shane*