**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH STREATER, | ) | CASE NO. 5:18-cv-643 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| SARCHIONE CHEVROLET, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion for class certification filed by plaintiff Joseph Streater ("Streater"). (Doc. No. 38, Motion ["Mot."]; Doc. No. 39, Memorandum in Support ["Memo."].) Defendant Sarchione Chevrolet, Inc. ("Sarchione") filed a brief in opposition (Doc. No. 44 ["Opp'n"]), and Streater filed a reply (Doc. No. 46 ["Reply"]). For the reasons set forth herein, Streater's motion is denied.

**I.     BACKGROUND**[1]

On March 20, 2018, Streater filed a class action complaint against Sarchione seeking relief under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") and the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.* ("OCSPA"). (Doc. No. 1.) On April 14, 2018, Streater filed his first amended class action complaint (Doc. No. 7), adding several individual state-law claims. On August 1, 2018, the Court granted Streater's motion for leave to file a second amended complaint to add another class claim under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("ECOA"). The second amended complaint was filed on August 3, 2018. (Doc. No.

---

[1] Any facts contained in this section are still subject to proof and are contained herein merely to set the context. The Court is not making any fact findings.

29 ["SAC"].) Streater alleges that Sarchione violated federal and state consumer protection statutes in connection with the sale of new and used motor vehicles.

## II. DISCUSSION

### A. Factual Background

Streater, who was and is a resident of New Jersey, wanted to purchase a 2014 (or newer) Chevrolet Camaro ZL1. In or around August of 2017, Streater searched the Internet and located several such vehicles for sale by various dealers, including Sarchione, which does business in Randolph, Ohio. Although Streater negotiated purchases with at least three other dealers, he was unable to obtain financing because he had a credit problem. (SAC ¶ 13; Doc. No. 45, Deposition of Joseph Streater ["Streater Dep."] at 646; 677–82.[2])

Streater eventually negotiated a purchase remotely with a Sarchione salesperson, Todd Bollman ("Bollman"). (SAC ¶¶ 14–15; Streater Dep. at 695.) Streater claims he disclosed his credit problems immediately (Streater Dep. at 698), but Sarchione assured him that it could obtain credit for him, if not through a bank, then through a subprime lender (such as Santander[3] or Westlake, both of whom were familiar to Streater). (*Id.* at 702–03; *see also* SAC ¶ 14.) Streater testified that he was advised by Bollman that preapproval for his financing had been obtained from Santander, provided he make a down payment of $10,000 or $12,000, which he was willing to do. (Streater Dep. at 708; SAC ¶ 18.)

Streater entered into a retail installment sale contract ("RISC") with Sarchione on October 28, 2017, for the purchase of a used 2017 Chevrolet Camaro. On the same day, he executed a Spot

---

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

[3] "Santander" refers to Santander Consumer USA. (Opp'n at 574.)

Delivery Agreement ("SDA"), which provided, *inter alia*, that Streater could take delivery of the vehicle before financing was approved.[4] (SAC ¶ 19.) Ultimately, Sarchione was unable to obtain financing from Santander, or from anyone else, on the original terms and the deal fell through. (Doc. No. 37, Deposition of Dane Wise ["Wise Dep."] at 364; Streater Dep. at 752.)

Streater never took possession of the Camaro and, apparently, forfeited at least $1,000 of the down payment. (Streater Dep. at 760.) In addition, Streater alleges that, while he was trying to figure out how to retrieve from Sarchione the vehicle he had traded in, Sarchione contacted the lienholder and misrepresented that Streater had abandoned the vehicle, whereupon the lienholder repossessed the vehicle (even though Streater was allegedly still making the payments on it) and wrongfully sold it at auction. (SAC ¶ 23.)

**B.  Legal Standards**

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979). To justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S. Ct. 2925, 41 L. Ed. 2d 706 (1974)).

Rule 23(a) sets out four requirements—numerosity, commonality, typicality, and adequate representation—that "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156, 102 S. Ct. 2364, 72 L. Ed.

---

[4] Copies of the RISC and the SDA are attached to the SAC as Ex. A and Ex. B, respectively. (Doc. Nos. 29-1 and 29-2.)

2d 740 (1982) (quotation marks and citation omitted). This is not "a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). Rather, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]" *Id.* at 350–51 (quotation marks and citation omitted). "No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b)." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc).

"Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017) (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)). "It is the party seeking class certification—here, [Streater]—that bears the burden of 'affirmatively demonstrat[ing]' compliance with Rule 23." *Id.* at 466–67 (quoting *Wal-Mart*, 564 U.S. at 350).

**C.     Analysis**

Streater seeks to certify the following class under Fed. R. Civ. P. 23(b)(3):[5]

> All persons who have signed a retail installment sale contract (RISC) prepared by [d]efendant and whose signatures were also obtained by [d]efendant on a form entitled "Limited Right to Cancel-Purchase (Spot Delivery)" or similar document purporting to give [d]efendant the ability to revoke the RISC under certain circumstances within one year of the filing of plaintiff's complaint [same as or more specifically defined as all persons who signed a retail installment sales contracts ([RISC]) similar or identical to exhibit "A" attached which contained a limited right to cancel provision where the box was not checked as being applicable and who were also required to sign a spot delivery agreement similar or identical to exhibit "B" from March 20, 2017 through the filing of [p]laintiff's initial complaint].

---

[5] The SAC proposes a general TILA class, with three subclasses, an ECOA class, and an OCSPA class. But the motion expressly states that plaintiff has made a "strategic decision to pursue certification only of the General Truth-in-Lending Class[.]" (Memo. at 528.)

4

(Mot. at 477.) Streater alleges, in support of his class allegations, that Sarchione "surreptitiously" obtains buyers' signatures on documents and delivers vehicles to customers "with no intention to honor any contract term or provision." (SAC ¶ 2.) Streater alleges that the RISC provided that Sarchione was the "seller-creditor" who was extending credit to Streater, whereas the SDA provided that Sarchione could void or change the terms of the RISC if Sarchione was unable to sell the deal to a third party. (*Id.* ¶ 19.) Streater argues that, whereas the RISC contained material credit disclosures required by TILA, the language in the SDA purported to relieve Sarchione of its "creditor" status. (Memo. at 532.)

### 1. Ascertainability

Sarchione asserts that the class proposed by Streater does not meet the ascertainability requirement. (Opp'n at 579–83.) "[T]he touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class membership." *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 391 (S.D. Ohio 2008). "[A] class should not be certified where extensive factual inquir[i]es are required to determine whether individuals are members of a proposed class[.]" *Napier v. Laurel Cty.*, No. 6:06-368-DCR, 2008 WL 544468, at *6 (E.D. Ky. Feb. 26, 2008).

Streater's proposed class would include any customer of Sarchione who, between March 20, 2017 and March 20, 2018, signed both a RISC similar to the one Streater signed and any form of an SDA (or its equivalent) purporting to give Sarchione the ability to revoke the RISC under certain circumstances.

In *Givens v. Van Devere, Inc.*, No. 5:11CV666, 2012 WL 4092738 (N.D. Ohio Sept. 17, 2012), on facts similar to the instant case, this Court rejected a motion seeking class certification, concluding that there were "significant differences in the forms signed by the various putative class

5

members . . . [that would require] a person-by-person analysis to simply determine which of [defendant's] customers fit within the proposed class[.]" *Id.* at *7. The same is true here.

Dane Anderson Wise ("Wise"), general manager for Sarchione (who has been associated with the business since Sarchione's formation), testified that he had been involved in every sale at some level, including Streater's. (Wise Dep. at 332; 338–39; Doc. No. 44-1, Affidavit of Dane Anderson Wise ["Wise Aff."] ¶¶ 2–3.) He explained that Sarchione works with about twenty (20) lenders, but only six (6) or seven (7) of those lenders use the same RISC form that was signed by Streater, which amounts to about 20% of Sarchione's financed sales. (Wise Dep. at 347–49; *see also* Wise Aff. ¶¶ 5–6, 10.) The customized forms required by the various lenders all contain different material terms as compared to the RISC signed by Streater. (Wise Aff. ¶¶ 11–12.)

Wise performed a detailed analysis of transactions that took place at Sarchione in September, October, and November of 2017 to determine how many transactions involved the same RISC signed by Streater and how many transactions were cancelled by Sarchione and/or the lender following the signing of the financing documents. (*Id.* ¶ 17.) He discovered that the following number of deals involved the same RISC as Streater's: 31 out of 146 (September 2017); 44 out of 107 (October 2017); and 30 out of 96 (November 2017). (*Id.* ¶¶ 18–36 & Exs. C, D, E.)

Of the 146 September 2017 deals, only two (2) involved a re-sign or voiding of the transaction documents, and both of those were done to benefit the customer; none of the September deals were canceled by the lender. (*Id.* ¶¶ 22–25.) Of the 107 October 2017 deals, only one (1) had to re-sign (because the parties agreed to a lower purchase price and financing was changed to a different institution) and one (1) (which was Streater's) was canceled by the lender. (*Id.* ¶¶ 30–31.) Of the 96 November 2017 deals, none were re-signed or canceled by the lender.

6

Thus, for the three (3) months reviewed, a significant majority of the putative class members (about 70%) did not sign the same RISC as Streater, and the RISCs they did sign were materially different than Streater's.

Streater has made no effort to refute these facts. Instead, in his reply brief, he merely declares that "[c]lass membership can be objectively determined by reviewing the RISC's [sic] and SDA's [sic] from March 20, 2017 through March 20, 2018." (Reply at 950.) Streater, however, does not conduct that review so as to direct the Court to facts (even a few *illustrative*, if not exhaustive, facts) that would call Sarchione's facts into question. He provides nothing but reliance on the allegations of his SAC and case citations (none of which are controlling because they are not from this circuit). This is insufficient to meet Streater's burden in the face of unrefuted facts adduced by Sarchione.

As in *Givens*, ascertaining class members will require detailed fact finding to determine whether the customized forms signed by the other putative class members were "similar or identical to" the one signed by Streater.

The proposed class is non-ascertainable and, therefore, should not be certified.

### 2. Rule 23(a) Requirements

Where ascertainability has not been met, some courts, including this Court, have found it unnecessary to conduct the full Rule 23(a) analysis. *See Givens*, 2012 WL 4092738, at *8 (noting that because "plaintiffs have failed to set forth adequate class definitions under the ascertainability inquiry[,] . . . the Court need not continue its rigorous review of the Rule 23 requirements[.]" (quotation marks omitted)). Nonetheless, the Court will briefly discuss the requirements, out of an abundance of caution.

### a) Numerosity

As shown by the analysis conducted by Wise and attested to in his affidavit, Streater was the only potential class member who signed the allegedly offending forms and later had his transaction canceled due to lack of financing (*i.e.*, the only person who can show harm). Sarchione asserts that, as a result, Streater cannot establish the requisite numerosity for class certification.

Streater argues in reply that Sarchione committed a technical violation by asking customers to enter into RISCs where the "limited right to cancel" was not integrated into the RISC, permitting Sarchione to later change the contract terms and, thereby, rendering the original disclosures meaningless. Using the numbers supplied by Wise, Streater argues that, even if the Court finds that the class can be composed of only customers who signed the same RISC *form* that Streater signed, the numbers, as extrapolated from Wise's numbers for the appropriate statutory period, are sufficient to establish numerosity. (Reply at 953.)

Sarchione urges the Court to conclude that class action treatment for a mere technical violation is impermissible, arguing that this Court reached that conclusion in *Givens*. The Court disagrees that this was addressed directly in *Givens*. Nonetheless, *Givens* still applies.

In *Givens*, this Court did not hold that a determination for purposes of numerosity may never be based on mere technical violations of the statute. In fact, technical violations may be ideally suited to class treatment. *See Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 403–04 (6th Cir. 1980) ("[T]he technical nature of the violations may well argue in favor of the appropriateness of the class action here. . . . The superiority of the class action in these circumstances lies in the fact that the class members may share in a financial recovery which, otherwise, they would never

pursue on their own behalf because of ignorance.");[6] *see also Abel v. KeyBank USA, N.A.*, No. 03 CV 524, 2004 WL 540699, at *9 (N.D. Ohio Mar. 4, 2004) ("[T]he Court rejects defendants' contention that the fact that plaintiffs' allegations appear to be based on a technical violation of TILA weighs against certification of the class.") (citing *Watkins*).

In *Givens*, however, this Court concluded that, because the complaint did not allege a mere technical violation but, rather, alleged intentional violations of TILA, and sought actual and statutory damages, the claims of Givens were different from the claims of other putative class members who had only claims of technical violations. The same is true here.

The Court concludes that Streater is unable to satisfy the Rule 23(a)(1) numerosity requirement.

### b) Commonality

Sarchione argues that there are no common questions of law or fact because most of the putative class members signed different transaction documents, with different material terms, and did not have their transactions cancelled for lack of financing, nor did they suffer any harm. (Opp'n at 586.) In particular, Sarchione argues that Streater alleges he suffered a completely different type of harm than any other putative class member. (*Id.* at 587.)

---

[6] In *Watkins*, the court ultimately concluded that denial of class certification was not an abuse of discretion *based on the facts* of that case. The court noted:

> The defendant is a small store and this was the first time that a truth-in-lending violation had been brought to its attention. It moved quickly after suit was filed to bring its installment contracts into compliance with the Act. This is an extreme case. Were we to order class-certification here, as a practical matter, class certification would be required in all cases. This would effectively negate the discretion of a district court to certify a class.

*Watson*, 618 F.2d at 404.
9

Once again, Streater argues in reply that the issue is not what documents were signed but whether Sarchione's failure to integrate the "limited right to cancel" into the RISC constitutes a TILA violation. This, Streater claims, is a common question of law. (Reply at 954.)

The Court agrees that it *is* a common question of law whether any failure to integrate a right to cancel into the sales contract that contained the TILA disclosures constitutes a technical violation of TILA. That said, the question is only answerable with reference to the actual documents signed; that is, each of the various RISC forms signed by Sarchione customers would need to be examined to ascertain whether it actually excluded any mention of a right to cancel. Thus, the variety of RISC forms in this case advises against class certification.

The Court concludes that Streater is unable to satisfy the Rule 23(a)(2) commonality requirement.

### c) Typicality

Sarchione argues that Streater's claims are not typical of the claims of putative class members. (Opp'n at 587.) The Court agrees.

Streater has alleged more than a technical violation of the statute with respect to his transaction with Sarchione, yet seeks to certify a class of members who may have only claims of technical violations. Streater himself allegedly suffered actual harm due to the alleged statutory violations. He has not shown that other putative class members suffered this same harm. Rather, Streater only argues that these others suffered a technical violation because the contract they signed did not contain the "limited right to cancel" language that was contained in a separate document that effectively rendered any TILA disclosures in the contract meaningless.

"The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. Here, as in *Sprague*, "[the]

named plaintiff who prove[s] his own claim [will] not necessarily have proved anybody else's claim." *Id.* If Streater proves that the SDA he signed effectively negated the disclosures in the RISC he signed, that will not necessarily prove the same for other putative class members who signed *different* forms, even if those forms meet the broad failure-to-integrate criterion repeatedly advanced by Streater as the basis for class certification.

Streater is unable to satisfy the typicality requirement of Rule 23(a)(3).

### d) Representative Party

Sarchione does not address whether Streater would be an adequate representative of the putative class. The Court concludes that he is not.

"The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). The Court cannot say for certain that Streater would not pursue other class members' mere technical claims, but it is conceivable that, to the detriment of the class, he would be more motivated to recover his own actual damages than mere statutory damages on behalf of himself and the class.

Streater does not satisfy the adequate representation requirement of Rule 23(a)(4.)

### 3. Rule 23(b) Requirements

Under Fed. R. Civ. P. 23(b)(3), a class action may be maintained if the prerequisites of Rule 23(a) are satisfied, and

> the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

"To evaluate predominance, '[a] court must first *characterize* the issues in the case as common or individual and then *weigh* which predominate.'" *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413–14 (6th Cir. 2018).

> An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."

*Tyson Foods, Inc. v. Bouaphakeo*, __ U.S. __, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (alteration in original).

The test set forth in *Tyson Foods* cannot be met here. Aside from the fact that Streater's claims are different from the technical violation claims of the putative class members, even the latter cannot be proven by all the same evidence since different customers signed different forms. Streater insists that the single issue is whether Sarchione's alleged failure to integrate the "limited right to cancel" into the RISC constitutes a TILA violation because Sarchione has the later right to change the terms, rendering the original disclosures meaningless. But, without examining each separate document signed by individual customers (or perhaps by small subgroups of customers who all used the same lender's forms), that question cannot be answered. In addition, the distinctiveness of the facts relating to Streater, as compared to the facts relating to the other putative class members, strongly suggests a lack of predominance.

Streater has failed to meet the predominance requirement of Rule 23(b)(3).

## III. CONCLUSION

For the reasons set forth herein, Streater's motion for class certification (Doc. No. 38) is denied. The case shall proceed only as to the claims of Streater set forth in the second amended complaint.

**IT IS SO ORDERED**.

Dated: July 5, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**